FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN DOE, an individual; JANE DOE, individually and as parent and next friend of Jill Doe, a minor child; JILL DOE, a minor child, by and through her next friend, Jane Doe,<br><br>               Plaintiffs-Appellants,<br><br>  v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT; RICHARD BARRERA, in his official capacity as Board President; SHARON WHITEHURST-PAYNE, in her official capacity as Board Vice President; MICHAEL MCQUARY, in his official capacity as Board member; KEVIN BEISER, in his official capacity as Board member; SABRINA BAZZO, in her official capacity as Board member; LAMONT JACKSON, in his official capacity as Interim Superintendent,<br><br>             Defendants-Appellees. | No. 21-56259<br><br>D.C. No.<br>3:21-cv-01809-CAB-LL<br>Southern District of California,<br>San Diego<br><br>ORDER |

Before: BERZON, IKUTA, and BENNETT, Circuit Judges.

The majority of the panel has voted to deny appellants' motion for

reconsideration en banc. Judge Berzon and Judge Bennett have voted to deny the

motion for reconsideration en banc. Judge Ikuta has voted to grant the motion for reconsideration en banc.

The full court has been advised of the motion for reconsideration en banc. A judge of the court requested a vote on en banc rehearing. The majority of the active judges have voted to deny rehearing the matter en banc. Fed. R. App. P. 35(f).

The motion for reconsideration en banc is DENIED. Judge Bumatay's dissent from the denial of rehearing en banc, Judge Berzon and Judge Bennett's concurrence in the denial of reconsideration en banc, Judge O'Scannlain's statement respecting the denial of rehearing en banc, Judge Bress's dissent from the denial of rehearing en banc, and Judge Forrest's dissent from the denial of rehearing en banc are filed concurrently herewith.

Judge Owens did not participate in the deliberations or vote in this case.



*John Doe, et al. v. San Diego Unified School District*, No. 21-56259
BUMATAY, J., Circuit Judge, with whom CALLAHAN, IKUTA, R. NELSON, COLLINS, LEE, and VANDYKE, Circuit Judges, join, dissenting from the denial of rehearing en banc:

Here we go again. When it comes to dealing with the COVID-19 crisis, the "Supreme Court's instructions have been clear, repeated, and insistent: no COVID-19 restriction can disfavor religious practice." *Tandon v. Newsom*, 992 F.3d 916, 939 (9th Cir. 2021) (Bumatay, J., dissenting in part and concurring in part). The Supreme Court has again and again admonished this court for failing to follow its guidance. Indeed, almost a year ago, the Court expressed frustration that, for the "*fifth time*," it had to "summarily reject[] the Ninth Circuit's analysis of California's COVID restrictions on religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (per curiam) (emphasis added). With this case, our court is gunning for a sixth.

Jill Doe is a 16-year-old student-athlete at a public high school in San Diego, California. She plays multiple sports and hopes to earn a college sports scholarship by excelling at those sports during the upcoming semester. In addition to being an avid athlete, Jill is devoted to her Christian beliefs. While Doe has developed natural immunity to COVID-19 from a prior infection, her religious beliefs forbid her from receiving any of the COVID-19 vaccines. But the San Diego Unified School District has implemented a COVID-19 vaccine mandate for its students. That mandate requires all students over the age of 16 to be vaccinated by January 4, 2022, or be

1

banned from attending school in-person starting January 24. While the mandate has plenty of secular exemptions, it expressly prohibits religious exemptions.

Jill appeals to this court to protect her religious convictions. She requests that we enjoin enforcement of the District's vaccine mandate against her before January 24; otherwise, she will be forced into an online, independent study program and isolated from her teachers and classmates. If she does not succumb to the mandate and violate her religious beliefs, she will be barred from campus and from playing on any school sports teams. All this while *thousands* of other unvaccinated students will continue to attend San Diego public schools under secular exemptions.

We should not have turned our back on Jill. Our duty is always to safeguard the people's rights no matter the challenges facing our communities. And the right to the free exercise of religion is foremost among our freedoms. It should go without saying—the Constitution protects Jill Doe's religious liberty even in times of crisis. Because the government should never force a student to choose between her religious beliefs and her education unless such a restriction is the least restrictive means of achieving a compelling government interest, we should have enjoined the application of the District's vaccine mandate in this case.

Today, our court failed Jill Doe on several grounds. But our crucial error was applying the wrong legal framework to her claim. *Tandon* teaches us that COVID-19 regulations trigger strict scrutiny "whenever they treat *any* comparable secular

2

activity more favorably than religious exercise." 141 S. Ct. at 1296. Yet the District's vaccine mandate not only has numerous comparable secular exemptions, but *expressly* prohibits exemptions for the religious. That alone should trigger strict scrutiny.

Instead, our court rubberstamps the District's mandate—opting for the anemic rational basis review. *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021). We get there by blindly accepting the District's characterizations of its secular exemptions, denying the comparability of the religious exemptions, and speculating about the risks of allowing those with religious exemptions to continue to attend class on campus. *Id.* at 1177–80. But these reasons cannot support the infringement of a fundamental freedom.

Our court's decision once again disregards Supreme Court precedent and threatens the religious liberty of tens of thousands of students in one of the largest counties in the United States. We should have granted en banc review to correct this grievous mistake before being told to do so yet again.[1]

---

[1] Separate parties have obtained a "tentative" writ of mandate preventing implementation of the District's vaccine mandate under state law. *Let Them Choose v. San Diego Unified Sch. Dist.*, No. 37-2021-43172-CU-WM-CTL (Cal. Super. Ct. Dec. 20, 2021) ("SDUSD's attempt to impose an additional vaccine mandate and force students . . . who defy it into non-classroom-based independent study directly conflicts with state law."). Yet, as the Supreme Court of California has not definitively resolved this issue, it remained our duty to fix our erroneous decision.

# I.

## A.

The First Amendment commands that government "shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. In responding to COVID-19, that means governments may not "single[] out religion for worse treatment than . . . secular activities." *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 719 (2021) (statement of Gorsuch, J.) (joined in relevant part by four other Justices). "When a State so obviously targets religion for differential treatment," courts must apply the most exacting scrutiny. *Id.* at 717. Last year, California enacted a set of COVID-19 restrictions that "openly imposed more stringent regulations on religious institutions than on many businesses." *Id.* Five justices of the Court found that this type of naked targeting of religion required strict scrutiny. *Id.* at 717–18.

In *Tandon*, the Court provided a framework for evaluating COVID-19-related restrictions:

First, "government regulations are not neutral and generally applicable . . . whenever they treat *any* comparable secular activity more favorably than religious exercise." 141 S. Ct. at 1296 (emphasis in original). And it is "no answer" that the government treats some secular activity "as poorly as or even less favorably than the religious exercise at issue." *Id.*

4

Second, "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.* (simplified). In judging comparability, we must look at the "risks various activities pose," not the purported reasons for the distinctions. *Id.* Thus, government regulations cannot treat secular activities more favorably when they "'contribute[] to the spread of COVID–19' or . . . present[] similar risks" as religious activities. *Id.* (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67–68 (2020) (per curiam)).

Third, if a regulation is not neutral and generally applicable, "the government has the burden to establish that the challenged [regulation] satisfies strict scrutiny." *Id.* To do so, the government "must do more than assert that certain risk factors 'are always present in worship, or always absent from the other secular activities' the government may allow." *Id.* (quoting *South Bay*, 141 S. Ct. at 718 (statement of Gorsuch, J.)). Instead, strict scrutiny requires "narrow tailoring" and proof that "less restrictive" measures could not achieve the interest in reducing the spread of COVID-19. *Id.* at 1296–97. "Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too." *Id.* at 1297.

5

Fourth, even if the "government withdraws or modifies a COVID restriction in the course of litigation, that does not necessarily moot the case." *Id.*

**B.**

The District's vaccine mandate *expressly* forbids exemptions for religious students:

> Under San Diego Unified's vaccine mandate for students who are 16 and older as of November 1, 2021, students who are not fully vaccinated by December 20, 2021 will transition from in-person learning to an independent study program at the start of the new semester and quarter on January 24, 2022. . . .

> All students 16 and older who are eligible for the COVID-19 vaccine under the district mandate are required to be vaccinated, excluding those with qualified exemptions or conditional admissions. *San Diego Unified does not allow religious exemptions for this particular vaccine.*[2]

But the District provides at least four secular exemptions to its vaccine mandate: it allows a student to avoid vaccination if she (1) turns 16 after November 1, 2021; (2) has a medical exemption; (3) is a "conditional student" who has recently been admitted; or (4) has an individualized education program ("IEP") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j). *See Doe*, 19 F.4th at 1175–76. Additionally, while the District prohibits religious

---

[2] *COVID-19 Status*, San Diego Unified School District, available at: https://sandiegounified.org/covid-19_status (last visited Jan. 7, 2022). Also available at Appendix A below.

exemptions for unvaccinated students, it permits religious exemptions for unvaccinated *staff*.

According to Jill, under the District's system of exemptions, nearly 85% of its student body will not be subject to the mandate. And for high school students, that number is over 60%. In real numbers, that translates into over 83,000 San Diego students, including 21,900 high schoolers, who will be allowed to attend in-person classes while unvaccinated. These figures provide important context for understanding the District's vaccination scheme and the real risks posed by its system of exemptions.

Under Supreme Court precedent, the question in this case is quite simple: Does the District's vaccine mandate treat religious exemptions less favorably than comparable secular exemptions? If so, we must apply strict scrutiny. The answer here is plainly "yes."

First, the District *expressly* targets the religious for worse treatment in direct violation of Supreme Court precedent. *See South Bay*, 141 S. Ct. at 719 (statement of Gorsuch, J.). The District's mandate baldly states: "San Diego Unified does not allow religious exemptions for this particular vaccine."[3] This statement alone should trigger strict scrutiny. When the government calls out religion *by name*, that is a clarion sign that we are not dealing with a neutral and generally applicable law. *See*

---

[3] *Id*. (last visited Jan. 7, 2022). Also available at Appendix A below.

7

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021) ("Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." (simplified)). Just like in *South Bay*, the District's singling out and rejection of a religious exemption shows that it is "target[ing] religion for differential treatment." *South Bay*, 141 S. Ct. at 717 (statement of Gorsuch, J.). And so, just as in *South Bay*, such discriminatory actions cannot stand unless the government can meet its exceptionally demanding burden under strict scrutiny.

And the District's justification for its decision has nothing to do with the health and safety risks involved with a religious exemption. The District admits as much. On its website, the District explains that because "state law does not recognize religious or personal belief exemptions," it cannot provide "religious exemptions for students."[4] Leaving no doubt about the District's targeting of religion, School Board President Richard Barrera explained to the local press that the District did not want to "create[] kind of a loophole" by allowing a "sort of personal belief" exemption.[5] So the District's vaccine mandate falls easily into the

---

[4] *Back to School FAQ—Vaccines*, San Diego Unified School District, https://www.sandiegounified.org/cms/One.aspx?portalId=27732478&pageId=3547 1525#Vaccines (last visited Jan. 7, 2022). Also available at Appendix B below.

[5] *What you need to know about San Diego Unified's vaccine mandate*, The San Diego Union Tribune, (Sept. 29, 2021), https://www.sandiegouniontribune.com/news/education/story/2021-09-29/what-parents-need-to-know-about-san-diego-unifieds-new-covid-vaccine-mandate.

category of regulations nakedly targeting religion. And even if it were true that state law prevents religious exemptions,[6] such a rationale clearly has nothing to do with the District's asserted interest in health and safety and cannot save it from strict scrutiny. And contrary to the District president's views, religious exercise isn't a "loophole," but a fundamental freedom. So to be faithful to Supreme Court precedent and our Constitution, we must apply strict scrutiny.

Second, because the District's secular exemptions pose nearly identical risks as religious ones, strict scrutiny is again triggered. A few scenarios demonstrate the irrefutable comparability of risk:

**Post-November 1 Birthday Exemption**: The District exempts any 16-year-old student whose birthday falls after November 1, 2021, from the vaccine mandate.[7] But this makes no sense from a risk perspective.

Imagine hypothetical students, Timmy and Tommy. Timmy and Tommy are both classmates and soccer teammates at a San Diego high school. Like Jill Doe, Timmy is devoutly religious and believes his faith prevents him from taking the

---

[6] A California Superior Court has recently held that the District's reading of the law is incorrect. *See Let Them Choose*, *supra* note 1.

[7] *See Student Vaccine FAQs*, San Diego Unified School District, https://sites.google.com/sandi.net/nursingwellness/covid-19-vaccine/student-vaccine-faqs ("Students who are 16 as of November 1, 2021 will be required to fulfill the vaccine requirement for January 4, 2022. Newly eligible students who turn age 16 after November 1, 2021 will be required to be vaccinated before the start of the new school year Fall 2022.") (last visited Jan. 7, 2022). Also available at Appendix C below.

COVID-19 vaccine. Tommy isn't so religious, but he prefers not to take the vaccine. Timmy has the misfortune of being born on October 31. Tommy, meanwhile, was lucky enough to be born two days later on November 2. Today, both students are 16-years old. Yet, under the District's mandate, Timmy will be expelled from in-person classes, forced into online learning, and kicked off the soccer team for being unvaccinated—all because he adheres to his religious beliefs. Meanwhile, Tommy will be exempt from the mandate for the entire school year and remain on the soccer team despite being unvaccinated.

The District, perhaps as a matter of administrative convenience, chooses to force Timmy into online learning while it allows Tommy to pose an identical risk to the student body. But the District cannot force Timmy to renounce his faith and submit to the mandate simply because he was born two days earlier than Tommy. More fundamentally, the Constitution forbids the government from using administrative convenience, rather than its asserted interest, to infringe on religious exercise.

**Medical Exemption**: The District permits medical exemptions from its vaccine mandate so long as the student gets a doctor's note. But once again, the District's medical exemption does not further its interest in the health and safety of the student body.

Let's look at another example. Assume Betty and Bea are 16-year-old twin sisters attending another San Diego high school. Betty has always been more devoted to her faith. She sincerely believes that receiving the COVID-19 vaccine would violate her religion. On the other hand, Bea once had a mild allergy to one of the components of the vaccine and qualifies for the District's medical exemption.[8] Of course, Betty and Bea share the same home. Both spent time over the holidays mingling with friends and family. Both are unvaccinated. But starting on January 24, Betty will be banned from campus, while Bea will continue her in-person education. Each day after school ends, Bea goes back to the same home as Betty, they eat the same meal, and interact with the same parents. But every morning, Betty watches her sister go back to school, while she must remain confined at home indefinitely.

It is abundantly clear that Betty and Bea, both unvaccinated, present the exact same risk of infecting their fellow students. After all, even beyond their vaccination status, they are both in constant interaction with the same group of people. But under the District's vaccination scheme, Bea's medical exemption permits her to enjoy the benefits of an in-person education, while her sister Betty is expelled from campus

---

[8] The medical exemption applies to "[a]nyone with a history of immediate allergic reaction of any severity to any component of the COVID-19 vaccine." *Id.* Also available at Appendix D below.

11

and condemned to online schooling—all for the crime of adhering to her religious beliefs.

**Conditional Student Exemption**: The conditional student exemption allows at least four types of new students (foster youth, homeless students, migrants, and military families) to be conditionally admitted to school without being vaccinated for 30 days. Say one of these newly enrolled students shows up on campus and is unvaccinated. The moment he steps foot on campus, he presents the same health and safety risks as an unvaccinated religious student. Even if these admissions only last 30 days, a flow of unvaccinated conditional students will remain on campus for the school year. And it's unclear what the District intends to do with conditional students who do not comply with the vaccine mandate after the grace period. The District's website only states "that a conditional admission is not an exemption, and a recurring effort is made by the school nursing team to support the child and family to access their records or receive a vaccination in a timely manner."[9] But it's hard to imagine that the District will force homeless students to enroll in online schooling.

**IEP Exemption**: Next, the District permits unvaccinated students with an IEP to remain on campus pending separate proceedings to bar them from attending school in person. And there's no telling how long that will take. But what is clear is that COVID-19 doesn't discriminate based on a student's status under the IDEA.

---

[9] San Diego Unified School District, *supra* note 7 (last visited Jan. 7, 2022).

So an unvaccinated IEP student has an equal chance of being infected and spreading COVID-19 throughout the school as an unvaccinated religious student.

To sum up, the following factual points about the District's policy are uncontested:

- An unvaccinated student born on November 2 can attend in-person classes, while an unvaccinated religious student born on October 31 cannot.
- An unvaccinated student with an allergy to the COVID-19 vaccine can attend in-person classes, while an unvaccinated religious student cannot.
- An unvaccinated student who conditionally enrolls on campus can attend in-person classes, while an unvaccinated religious student cannot.
- An unvaccinated student with an IEP can attend in-person classes, while an unvaccinated religious student cannot.

Taken together, the District's patchwork of exemptions is inconsistent with its asserted interest in protecting the health of students from the COVID-19 pandemic. Given that the risks posed by unvaccinated students with secular exemptions are the same as those posed by unvaccinated religious students, the District's failure to provide a religious exemption must be subject to strict scrutiny under *Tandon*.

## C.

To distract from the obvious similarity of risks created by the secular and religious exemptions, the panel majority instead focused on the *reasons* why the secular exemptions exist. Such an approach flouts the Supreme Court's commands in *Tandon,* which renders nearly irrelevant the *reason* why secular exemptions are granted. 141 S. Ct. at 1296. That was a critical error.

13

As the panel majority sees it, the medical exemption makes sense because it serves the health and safety of the *individual* student. *Doe*, 19 F.4th at 1178. But that is not the District's stated interest here—it is to combat the spread of COVID-19 school-district wide.[10] To this day, the District claims that the vaccination of students in kindergarten through high school is a "major step toward preventing the spread of the virus in our community and nationwide."[11] So while the medical exemption is certainly prudent, it undermines the District's interest in mitigating risks to the student body by stopping the transmission of COVID-19. In other words, if the District can grant a reprieve for medical exemptions, it can also do so for the religious.

The same goes for the IEP exemptions. The panel majority doesn't seriously dispute that an unvaccinated IEP student poses a risk of spreading the COVID-19 virus. But it instead justifies that exemption because federal law requires schools to follow certain protocols to bar student admission. *Id.* at 1179–80. That may be so, but I see no reason to defer to a student's *statutory* right under the IDEA, while

---

[10] *See Vaccinate Roadmap* at 2, San Diego Unified School District (Sept. 28, 2021), available at: https://go.boarddocs.com/ca/sandi/Board.nsf/files/C797R4004A4C/$file/Vaccine%20Mandate%20Plan.pdf ("Why are we recommending mandating vaccines for staff and students? San Diego Unified is working to ensure the highest-quality instruction in the safest environment possible for all students and employees. Strong scientific evidence shows that vaccinations are an essential part of protecting our communities.") (last visited Jan. 7, 2022).

[11] San Diego Unified School District, *supra* note 2 (last visited Jan. 7, 2022).

14

completely disregarding a student's *constitutional* right to the free exercise of religion.

As for the conditional students, the panel majority again turns to state law. Though it acknowledges that there is no current California law requiring proof of COVID-19 vaccination for school attendance, it speculates that such a mandate will be the law in the future. *Id.* at 1179. At that point, the majority surmises, conditional students will be subject to the vaccine mandate. *Id.* So no one needs to fear; the majority assures us that these students will be vaccinated soon enough.

Finally, the majority simply has *no answer* to explain the inexplicable—why the November 1, 2021, cut-off date for the vaccine mandate has any basis in the District's interest in the health and safety of the student body.

Simply put, the District can't have it both ways by allowing secular exemptions but prohibiting religious ones. If the District offers *any* secular vaccine exemption with a similar risk profile to a religious exemption, it must satisfy strict scrutiny to exclude a religious exemption. The Constitution forbids the District from picking and choosing its preferred secular exemptions while disfavoring religious exemptions. And this remains true in times of crisis. *See Tandon*, 992 F.3d at 930 (Bumatay, J., dissenting). In short, the panel majority's attempt to transform the constitutional inquiry from assessing the comparability of risks to asking whether

15

the District had a good reason for a secular exemption falls well short of what our Constitution demands.

## D.

As a fallback, the panel majority attempts to bolster its position by speculating on the number of students using the secular exemptions and the length of those exemptions to justify the exclusion of religious exemptions:

> [A]lthough the record does not disclose the number of students who have sought or are likely to seek a medical exemption, if that number is very small and the number of students likely to seek a religious exemption is large, then the medical exemption would not qualify as "comparable" to the religious exemption in terms of the "risk" each exemption poses to the government's asserted interests.

*Doe*, 19 F.4th at 1178; *see also id.* at 1180 (noting that the "limited time period" of secular exemptions make them incomparable to religious ones). The majority thus concludes, so long as there won't be *as many* secular exemptions as religious exemptions and so long as secular exemptions won't last *as long* as religious ones, then the District is free to forbid religious exemptions. *Id.* at 1178–80. In other words, the government can favor secular interests over religious liberty if that preferential treatment isn't permanent or isn't as popular as the religious interest.

But that's not how the Constitution works. Whether the First Amendment right to religious liberty is protected has nothing to do with the number of religious observers or the persistence of their religious beliefs. As Judge Ikuta noted in her dissent, even the temporary loss of an individual's free exercise rights constitutes an

16

unconstitutional infringement. *Id.* at 1186 (Ikuta, J., dissenting) ("But the majority identifies no authority suggesting that the School District can treat secular activity more favorably than religious activity simply because the disparate treatment is only temporary.") (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.")).

Even setting aside the majority's legal errors, the majority relies on unfounded speculation to reach its desired result. First, the majority suggests that fewer students will use the medical exemption than the religious exemption. *See Doe*, 19 F.4th at 1178. But the District's rules do not cap or otherwise limit the number of students who are eligible to receive a medical exemption. So, the majority just speculates that fewer students will avail themselves of the medical exemption. But this sort of speculative reasoning cannot be used to cast aside a student's religious liberty. *Cf. Tandon*, 141 S. Ct. at 1296 (holding that the government "must do more than assert that certain risk factors are always present in worship, or always absent from the other secular activities the government may allow." (simplified)).

Second, according to the panel majority, the medical exemption is also temporary and thus distinguishable from the religious exemption. Once again, the majority relies on wrongheaded speculation. There is no basis to suggest that a student who has a medical allergy to the COVID-19 vaccine will overcome that

17

allergy and be medically cleared to take the vaccine during the school year. Simply put, a medical allergy can potentially last a lifetime and so there's no way for the majority to know when such medical exemptions will expire. *See Doe*, 19 F.4th at 1186 n.7 (Ikuta, J., dissenting). Furthermore, the District requires students with longer-term medical exemptions to reapply for an exemption once a year. *Id.* at 1178. So one doctor's note is sufficient to be excused from the mandate for the school year. In short, it is just as likely that a student with a medical exemption will retain his condition throughout the school year as a religious student will retain her faith throughout the school year.

Lastly, no amount of speculation can explain why 16-year-old students with birthdays after November 1 present less risk to health and safety than religious students. As the school year goes on, more and more students will turn 16—increasing the number of students taking advantage of the November 1 exemption. And once a student turns 16, they are exempt for the rest of the school year—nothing temporary about that. So there is no conceivable link to health and safety that can support the District's arbitrary decision to pick a random date on the calendar while categorically excluding religious exemptions.

**E.**

Having made clear that strict scrutiny applies, the District's vaccination scheme fails to meet that exceptionally high bar. Strict scrutiny requires the District to further its asserted health and safety interests through narrowly tailored means. *See Tandon*, 141 S. Ct. at 1298. The District must show that "measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID." *Id.* at 1296–97. If the District chooses to allow unvaccinated students on campus through secular exemptions, it must show how exemptions for unvaccinated religious students are "more dangerous" to the student body. *See id.* at 1297. "Otherwise, [exemptions] that suffice for [secular reasons] suffice for religious exercise too." *Id.* (simplified).

The District can't meet its burden of showing that the ban on religious exemptions is the least restrictive means of combatting COVID-19. The undeniable fact is that San Diego public schools are teeming with students who are unvaccinated, because of either their birthdays, allergies, learning disabilities, or familial statuses. Thus, the District has shown that it can accommodate these students but has barely even tried to prove why it could not offer the same arrangement to the religious.

Moreover, it turns out that the District does allow some religious exemptions—but only to unvaccinated *staff*. That means that unvaccinated teachers,

19

librarians, custodians, coaches, and staff may appear in person if they are religious, while unvaccinated religious students cannot. No one can seriously deny that unvaccinated religious staff and unvaccinated religious students pose similar health and safety risks of spreading COVID-19 on school grounds.[12] If the staff exemption is consistent with the District's interest in the health and safety of its campuses, it strains credulity to believe that the District could not offer the same for its students.

For all these reasons, "the vaccine mandate is stricter than necessary to meet the School District's asserted goals, and therefore is not narrowly tailored." *Doe*, 19 F.4th at 1187 (Ikuta, J., dissenting).

\* \* \*

In short, Jill has easily proven she's entitled to an injunction. She has shown both "serious questions going to the merits" and that "the balance of hardships tips sharply in [her] favor." *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (simplified). As discussed above, the District's prohibition against religious exemptions cannot be justified under the First Amendment given the patchwork of comparable secular exemptions. And no one can question the hardship that Jill faces—she either will be coerced to violate her religious beliefs

---

[12] Arguably unvaccinated staff pose a greater risk of COVID-19 transmission because they speak and lecture to classrooms of students every day.

and take the vaccine or be forced into inferior online classes, harming her education, wellbeing, and future.

## II.

Today, our court allows the threat of COVID-19 to force Jill Doe and other San Diego students to violate their religious beliefs or face severe punishment. Expulsion from school. Kicked off sports teams. Isolated from teachers and classmates. But because our Constitution endures through times of crisis, Jill should not have to face these life-altering consequences.

I respectfully dissent.

# Appendix

# A.

**Vaccines**

San Diego Unified wants every school to be a place of great teaching and learning, safety and wellness. Vaccinations are a crucial part of the multi-layered protection against COVID-19, and getting your student vaccinated is one of the best ways to protect against the spread of the virus.

The latest vaccine recommendation from the CDC means the vast majority of students in kindergarten through high school are now eligible to be vaccinated against COVID-19, signaling a major step toward preventing the spread of the virus in our community and nationwide.

Under a vaccine mandate approved by the Board of Education, San Diego Unified will require students who are 16 and older as of November 1, 2021 and who wish to continue learning in-person to be fully vaccinated, effective January 24, 2022 at the start of the new semester/quarter. Full FDA approval is in place for this student group.

Students ages 5 to 15 are recommended to receive a COVID-19 vaccine by the FDA and the CDC. San Diego Unified supports this recommendation, but will not require the COVID-19 vaccination for this student group at this time.



We understand you may have questions about the new CDC decision approving vaccinations for students 5 to 11. Please click here for more information on the safety of the vaccinations. Families are encouraged to check with their healthcare providers about getting the vaccine as soon as possible.

MyTurn.ca.gov offers information about getting a vaccine through walk-in and scheduled appointments. Click here for information on where to get a free vaccine elsewhere in the community.

Our community health partners plan to supplement vaccine availability by offering vaccine clinics on school sites. Check here frequently for current schedules and updates.

Under San Diego Unified's vaccine mandate for students who are 16 and older as of November 1, 2021, students who are not fully vaccinated by December 20, 2021 will transition from in-person learning to an independent study program at the start of the new semester and quarter on January 24, 2022. To view a district presentation on the mandate, visit this LINK.

All students 16 and older who are eligible for the COVID-19 vaccine under the district mandate are required to be vaccinated, excluding those with qualified exemptions or conditional admissions. San Diego Unified does not allow religious exemptions for this particular vaccine.

# B.

**Are there religious exemptions for students?**  ︿

No.  As with other immunizations for students, state law does not recognize religious or personal belief exemptions.

# C.

**My student turns 16 after Monday, January 4.   How much time do we have to be fully vaccinated?** ∧

Students who are 16 as of November 1, 2021 will be required to fulfill the vaccine requirement for January 4, 2022.  Newly eligible students who turn age 16 after November 1, 2021 will be required to be vaccinated before the start of the new school year Fall 2022.

# D.

**If a student had an allergic reaction to previous vaccination for COVID-19, is that student still required to be fully vaccinated to participate in onsite education?  What about people with serious allergic reactions to non-COVID vaccines or other substances?** ∧

Anyone with a history of immediate allergic reaction of any severity to any component of the COVID-19 vaccine (or to polysorbate or polyethylene glycol), should not be vaccinated and can qualify for a medical exemption, as long as District medical exemption protocols are followed. Polysorbate is not a vaccine ingredient but was included because people sensitive to it may also react to polyethylene glycol, which is a component. The CDC advises that people with allergy histories that involve polysorbate or polyethylene glycol should be considered for allergist or immunologist referral in order to determine if they can receive the COVID-19 vaccine.

As for highly-allergic individuals who have experienced severe allergic reactions to other substances that are not present in the COVID-19 vaccine, this vaccine is well tolerated and causes no allergic reactions in 98% of cases.  Consultation with their physician is advised.  Those who feel they may qualify for a medical exemption need to complete the Medical Exemption Request form and submit to Immunizations@sandi.net

*John Doe, et al. v. San Diego Unified School District*, No. 21-56259



BERZON and BENNETT, Circuit Judges, concurring in the denial of reconsideration en banc:

The only question presented to the district court and addressed by the motions panel was whether Doe's request for an injunction pending appeal should be granted. Notably, the motions panel's majority opinion is explicit that, under Ninth Circuit case law, its reasoning is not binding on the panel to which the preliminary injunction appeal is assigned.[1] Judge Bumatay's dissent from the denial of rehearing en banc loses sight of the limited issue the motions panel decided. It also inaccurately recasts this case.[2]

First, Judge Bumatay states that San Diego Unified School District ("SDUSD") is requiring all students over the age of 16 to become fully vaccinated "by January 4, 2022." Bumatay Dissent at 1–2. SDUSD has explained that, although students were *encouraged* to become fully vaccinated by January 4, the

---

[1] *See* Slip Op. at 10 n.4 (citing *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660 (9th Cir. 2021)). The opening brief on the merits for that appeal is currently due on January 18, 2022, the answering brief is due on February 17, 2022, and the optional reply brief is due 21 days after service of the answering brief. Oral argument has not yet been scheduled.

[2] The motions panel's majority opinion adequately responds to the dissents from denial of rehearing en banc of Judge Bress and Judge Forrest, and to Judge O'Scannlain's statement respecting the denial of rehearing en banc, so we do not address them here.

1

actual deadline for vaccination is "the start of the Spring" semester on January 24, 2022.

Second, Judge Bumatay states that the motions panel's "crucial error was applying the wrong legal framework to [Doe's] claim." Bumatay Dissent at 2. But the motions panel's majority opinion and Judge Bumatay's dissent cite the same legal rules, including the Supreme Court's guidance in *Tandon* that a regulation is subject to strict scrutiny review when it "treat[s] *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam); *see also, e.g.*, Slip Op. at 13 (Motions Panel Majority Opinion); Bumatay Dissent at 2–3. The panel majority applied rational basis review to the mandate because it concluded that no *comparable* secular activity was treated more favorably than religious activity. *See* Slip Op. at 9–15 (Motions Panel Majority Opinion). So the disagreement between the panel majority and the en banc dissenters is fundamentally factual. It is not a dispute over the relevant legal standards.

Third, Judge Bumatay states that "[s]eparate parties have obtained a 'tentative' writ of mandate preventing implementation of" the vaccination mandate. Bumatay Dissent at 3 n.1. It is our understanding that the writ of mandate, issued from the bench by the San Diego Superior Court on December 20,

2021, is not currently in effect pending appeal by operation of state law.  But the decision itself is final, not tentative.[3]

Fourth, Judge Bumatay asserts that the mandate is facially discriminatory against religion, citing language from a January 7, 2022 screenshot of an SDUSD webpage, which, at that time, stated that SDUSD "does not allow religious exemptions for this particular mandate."  Bumatay Dissent at 7.  Judge Bumatay argues that "[t]his statement alone should trigger strict scrutiny."  *Id.* at 7–8.

But, at the time of the passage of the mandate, its terms did not "make any reference to religion or 'a religious practice without a secular meaning discernable from the language or context.'"  Slip Op. at 10 (Motions Panel Majority Opinion) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)).  The webpage cited by Judge Bumatay is not in the record.  As presently constituted, the webpage no longer contains any statement about religious exemptions.[4]  And the statement cited by Judge Bumatay was not included on the webpage at the time of the mandate's passage or the initiation of

---

[3] *See, e.g.*, Respondents' Letter re: State Case, *Doe v. San Diego Unified Sch. Dist.*, Case No. 21A217 (Dec. 26, 2021), https://www.supremecourt.gov/DocketPDF/21/21A217/206447/202112261934321 42_Ltr%20Responding%20to%20Applicant%20Ltr%2012262021.pdf.

[4] *See COVID-19 Information*, San Diego Unified Sch. Dist., https://sandiegounified.org/covid-19_status (last visited Jan. 13, 2022).

this litigation.[5]  So the statement is irrelevant for present purposes.  Further, even if the webpage statement were considered relevant, there is no meaningful distinction between a policy that does not provide religious exemptions but makes no express mention of that fact, and a policy that does not provide religious exemptions and includes, for clarity, a statement to that effect.  The statement—which, in this case, may have been included on the SDUSD webpage to inform the community about the boundaries of the mandate in light of ongoing litigation—does not evince animus toward or discriminatory treatment of religion.[6]

Fifth, Judge Bumatay contends that SDUSD intentionally treated religious students less favorably than other students because "School Board President Richard Barrera explained to the local press," in response to the question whether students could receive a personal belief exemption, that "the District did not want

---

[5] *See* The Wayback Machine, https://web.archive.org/web/20201001000000*/https://sandiegounified.org/covid-19_status (last visited Jan. 13, 2022) (capturing snapshots of the SDUSD webpage at different points in time in 2021 and 2022).

[6] A PowerPoint presentation regarding the mandate explained that "[s]tate law does not recognize religious or personal belief exemptions for student immunizations."  Even if the presentation is considered part of the mandate itself, its inclusion of a single, accurate remark about the state law applicable to other required vaccines does not qualify as targeting religion for inferior treatment.  *See* Cal. Health & Safety Code § 120325 (not permitting religious or personal belief exemptions for a list of 10 required vaccinations); *see also id.* § 120338 (permitting religious or personal belief exemptions for vaccinations "deemed appropriate" by the Department of Public Health but not yet added by name to the Health and Safety Code by the California legislature).

4

to 'create[] kind of a loophole'" by allowing for such exemptions. Bumatay Dissent at 8. That statement was made *after* the School Board adopted the mandate, and in response to a question that focused on *personal belief* exemptions, which the District treats as a distinct category of exemptions separate from religious exemptions. The statement therefore did not undermine the neutrality of the mandate as to religion.

Sixth, Judge Bumatay states that "nearly 85%" of SDUSD's student body "will not be subject to the mandate," which "translates into over 83,000 San Diego students, including 21,900 high schoolers, . . . attend[ing] in-person classes while unvaccinated." Bumatay Dissent at 7. That understanding is incorrect. The mandate applies to students who are 16 or older, those who are 12 to 15, and those who are 5 to 11 in three stages, "[p]ending FDA approval" of vaccines for each age group. It cannot be that proceeding in a phased manner in light of ongoing clinical research and staged FDA vaccine approvals—in other words, doing one's best to safely promote the health of students while also complying with federal and state law—demonstrates animus toward or discriminatory treatment of religion, or that SDUSD's policy is not neutral. Additionally, as of September 29, 2021, "more than 64 percent of [SDUSD] students 12 and older ha[d] received at least one dose of the Covid-19 vaccine, and more than 57 percent [we]re fully vaccinated." Many more have surely been vaccinated against COVID since then, as have many

5

younger children. And, in fact, much of the material submitted by the plaintiffs in the district court and in plaintiffs' stay motion seemingly attacked the constitutionality of the policy not only as applied to Doe, but also as to be applied to younger students. Judge Bumatay's figures therefore are not accurate, nor is his characterization of the scope of the mandate.

Seventh, Judge Bumatay states that SDUSD "exempts any 16-year-old student whose birthday falls after November 1, 2021, from the vaccine mandate." Bumatay Dissent at 9. Such students are not *exempt* from the mandate. Instead, they are subject to a different vaccination deadline. And importantly, plaintiffs did not advance any argument about this subset of students before the district court or the motions panel. The very first time this argument surfaced before this Court was in the plaintiffs' request for reconsideration en banc. The District therefore had no opportunity to submit any factual information concerning the cutoff date or to consider whether to vary the birthday deadline for the mandate. Plaintiffs' argument, and any allegations of fact related to it, should have been presented to the district court, not in a motion seeking en banc review. If the argument had been raised earlier, the District may have revised this aspect of the policy, as it did the now defunct per se pregnancy exemption. *See* Slip Op. at 6–8, 20 n.1.

Eighth, Judge Bumatay states that SDUSD "permits medical exemptions from its vaccine mandate so long as the student gets a doctor's note." Bumatay

6

Dissent at 10. This characterization of the medical exemption is incorrect. The medical exemption is "limited to students with contraindications or precautions recognized by the Centers for Disease Control and Prevention or the vaccine manufacturer," and must be "certified by a physician" as necessary for the health and safety of an individual student. Slip Op. at 11 (Motions Panel Majority Opinion). The policy also places other limitations on medical exemptions. For example, if the certifying physician is not the primary care physician of the student, the student must explain why he or she relied on the services of the certifying physician. In short, the medical exemption, substantively and procedurally, is far more stringent than Judge Bumatay's portrayal.[7]

At times, Judge Bumatay appears to view SDUSD's asserted interest as confined to single-mindedly suppressing COVID infections, no matter the harm to a few medically vulnerable students. *See, e.g.*, Bumatay Dissent at 11, 14; *see also*

---

[7] The prerequisites to obtaining a medical exemption also mean that such exemptions are likely to be either temporary or rare. Indeed, some "precautions" to COVID-19 vaccines, such as "moderate or severe acute illness," are inherently limited in duration. *See COVID-19 Vaccine FAQs for Healthcare Professionals*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/vaccines/covid-19/hcp/faq.html (last updated Dec. 17, 2021) (under the question, "What are precautions to COVID-19 vaccination?"). And "contraindications" to the vaccine are exceedingly rare. *See, e.g., id.* (under the question, "What are contraindications to COVID-19 vaccines?"); *see also Allergic Reactions Including Anaphylaxis After Receipt of the First Dose of Pfizer-BioNTech COVID-19 Vaccine—United States, December 14–23, 2020*, Ctrs. for Disease Control & Prevention (Jan. 6, 2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7002e1.htm.

Bress Dissent at 1–2. But the record demonstrates that SDUSD's core interest in promulgating the student vaccination mandate was to promote "the health and safety of [its] students" overall, including through medical exemptions. The mandate is consistent with that interest, as it requires vaccination in all cases in which vaccination will not harm the health and safety of a specific student. *See also, e.g.*, *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (per curiam) (recognizing that the State's interest was "public health," not reducing COVID cases for its own sake); *Emp. Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 874, 878–82 (1990) (upholding a law criminalizing controlled substance possession that had an incidental effect of burdening religion even though the law contained an exemption for substances prescribed for medical purposes); *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944) (stating that "[t]he right to practice religion freely" is not "beyond regulation in the public interest," including regulation aimed at reducing the risk of "expos[ing] the community or the child to communicable disease or the latter to ill health or death").

Ninth, Judge Bumatay characterizes the 30-day conditional enrollment period for foster youth, students in "migrant" status, homeless students, and military families as an "exemption." Bumatay Dissent at 12. He also characterizes the temporary procedural protections for students with Individualized Education

Progams as an "exemption." *Id.* at 12–13. The motions panel's majority opinion explains why those aspects of the mandate do not treat secular activity more favorably than religious activity and so do not trigger strict scrutiny. Slip Op. at 13–15 (Motions Panel Majority Opinion). We emphasize, once more, that these students are not *exempt* from the mandate. The only students exempt from the mandate are those who receive a medical exemption. What Doe is requesting is an exemption, not a delay in the deadline for compliance or further consultation regarding how and when she must comply.[8]

Finally, this case is not *Tandon*. *Tandon* concerned an outright ban on group worship in private homes. 141 S. Ct. at 1296–97. SDUSD is not preventing Jill Doe from practicing her religion, as was the case in *Tandon*. Doe may worship as she pleases and may continue to abstain from vaccination for religious reasons. The SDUSD policy prevents her only from attending school *in person* and from participating in school sports—not from receiving a public education, participating in private sports leagues, or fully practicing her religion.

---

[8] Judge Bumatay also argues that the *student* vaccination mandate is not generally applicable because the *employee* vaccination mandate includes a religious accommodation procedure. Bumatay Dissent at 19–20. But the student vaccination mandate and employee vaccination mandate are distinct policies. And, in any event, the procedure is not a religious *exemption*. It is a legally required interactive process that may ultimately result in a denial of the requested accommodation, such as on the ground that an exemption would pose an "undue hardship" on the employer by burdening "the conduct of the employer's business." Slip Op. at 15–16 (Motions Panel Majority Opinion).

In sum, the COVID-19 pandemic has claimed the lives of more than 840,000 Americans.[9]  As we explained, "[t]he record indicates that vaccines are safe and effective at preventing the spread of COVID-19, and that SDUSD's vaccination mandate is therefore likely to promote the health and safety of SDUSD's students and staff, as well as the broader community."  Slip Op. at 18 (Motions Panel Majority Opinion).  Plaintiffs have not carried their burden to establish "that the mandate was implemented with the aim of suppressing religious belief, rather than protecting the health and safety of students, staff, and the community."  *Id.* at 10.  Accordingly, the motions panel properly denied plaintiffs' motion for an injunction pending appeal.

---

[9] *Covid Data Tracker*, Ctrs. for Disease Control & Prevention, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited Jan. 13, 2022).



*Doe v. San Diego Unified School District*, No. 21-56259

O'SCANNLAIN, Circuit Judge,[1] respecting the denial of rehearing en banc:

I agree with the views expressed by Judge Bumatay in his dissent from denial of rehearing en banc.

---

[1] As a judge of this court in senior status, I no longer have the power to vote on calls for rehearing cases en banc or formally to join a dissent from failure to rehear en banc. *See* 28 U.S.C. § 46(c); Fed. R. App. P. 35(a). Following our court's general orders, however, I may participate in discussions of en banc proceedings. *See* Ninth Circuit General Order 5.5(a).

*Doe v. San Diego Unified School Dist.*, No. 21-56259

BRESS, Circuit Judge, joined by BADE, Circuit Judge, dissenting from the denial of rehearing en banc:

I would have heard this matter en banc because the panel majority's analysis is inconsistent with the analytical approach for Free Exercise Clause claims that the Supreme Court set forth in *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (per curiam). There are understandable and important reasons why a school district would want to impose a COVID-19 vaccine mandate for its students. It is also understandable why a school district may want to exempt some students from that mandate, such as students who would experience an adverse medical reaction to a vaccine or those who have just arrived in the area due to a parent's military transfer. But when a school district, as here, allows secular exemptions to its vaccine mandate but disallows exemptions for students with sincerely held religious objections, we must examine whether the adverse treatment of "comparable" activity by religious students is justified based on "the risks" of the activity in connection with "the asserted government interest that justifies the regulation at issue." *Id.* at 1296 (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam)).

Here, there is no indication that the risks of spreading COVID-19 that the plaintiff poses as an unvaccinated student are any different than the risks posed by

other unvaccinated students who are nonetheless allowed to attend school in person based on an approved secular exemption to the district's vaccine mandate. That basic feature of this case required us to apply strict scrutiny, and there is little doubt that the district's policy would fail that rigorous review.

The harm here is also substantial. There is, of course, an innate constitutional harm associated with treating persons with religious objections differently without justification. And as many parents of schoolchildren would by now attest, the difference between in-person and virtual learning is a significant one. Requiring the plaintiff to experience high school through a computer screen when her unvaccinated classmates can attend school in person based on secular exemptions is not the situation *Tandon* envisioned.

Like other of my colleagues who have dissented at both the panel and en banc stages, I respectfully dissent from the denial of rehearing en banc.

2

*John Doe, et al., v. San Diego Unified School District*, No. 21-56259
FORREST, Circuit Judge, dissenting from the denial of rehearing en banc:

I agree that strict scrutiny applies to the plaintiffs' First Amendment challenge where the San Diego Unified School District's COVID-19 vaccine mandate allows unvaccinated students who are otherwise subject to the mandate to continue attending school and school activities in-person for secular reasons but requires students who are unvaccinated for religious reasons to attend online classes and forgo school activities that cannot be performed remotely. *See Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) ("[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise."); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). I also agree that plaintiffs have raised "serious questions going to the merits" of whether the San Diego Unified School District can satisfy strict scrutiny and, as such, they have shown that they are likely to suffer irreparable harm without a stay and that the "balance of hardships" weighs in their favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Roman Cath. Dioceses*, 141 S. Ct. at 67 ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). We should rehear en banc the motion for a stay pending appeal.

I respectfully dissent from the denial of rehearing en banc.